STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-17-355

MEG N. JOHNSON,

        Plaintiff

v.

JUDGMENT

MONICA L .QUIMBY

and

RICHARD V. ROBERGE,

        Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office
MAR 29 2018
2:14 PM
RECEIVED

## Background

Jury-waived trial on plaintiff Meg N. Johnson's complaint against defendant Richard V. Roberge was held on March 22, 2018. Plaintiff filed her complaint on September 14, 2017. Defendant Quimby was served with plaintiff's complaint on November 2, 2017 and filed an answer on November 13, 2017. Plaintiff has settled her claims against defendant Quimby and will file a dismissal.

Defendant Roberge was served with plaintiff's complaint October 18, 2017. He did not respond to plaintiff's complaint and his default was entered on November 29, 2017. Notice of the hearing was sent to defendant Roberge at his two addresses in the court's file. One was returned. Plaintiff appeared at the trial with counsel. Defendant Roberge failed to appear.

## Facts

Because of defendant Roberge's default, the facts in the complaint are deemed to be true. See Ireland v. Carpenter, 2005 ME 98, ¶ 18, 879 A.2d 35. The accident involving the car operated

1

by plaintiff and the car operated by defendant Roberge in Old Orchard Beach on February 8, 2014 was caused by defendant Roberge's negligence. (Compl. Count II, ¶¶ 12-17.) The trial evidence also supports this conclusion. (Pl.'s Exs. 3-7.) Further, his negligence proximately caused injuries and damages to plaintiff. (Compl. Count II, ¶¶ 17-18; Count III, ¶¶ 2-3.) The trial evidence also supports this conclusion. (Pl.'s Ex. 8 30.) Plaintiff is 25 years old.

Operating at a speed of 40 m.p.h., defendant Roberge rear ended the car operated by plaintiff. Plaintiff's head hit the steering wheel and window. Inside car lights fell on plaintiff's head. She sustained a traumatic brain injury and injuries to her head, shoulder, neck, and back. Plaintiff was in extreme pain and was screaming and crying. (Pl.'s Ex. 1, R. 0004; R. 0046-47; R. 0075; Pl.'s Ex. 8 7.)

As a result of scoliosis, titanium rods had been inserted in plaintiff's back in August 2008. Immediately after the accident, plaintiff was terrified that she was paralyzed and was dying. She was unable to see her then boyfriend, who was a passenger in her car, and thought he was dead.

After the accident, plaintiff suffered from constant migraines, which made her nauseous, sensitive to light and sound. (Pl.'s Ex. 8 12-19.) She felt as though there were a thousand rocks in her head, swishing together. She had a history of concussions and headaches, which made her more at risk for increased symptoms from an additional concussion. (Pl.'s Ex. 8 10; 31.) The headaches she suffered after the accident and continues to suffer are much more severe than those suffered before the accident. She was able to control the pre-accident headaches with Tylenol and Advil, which are ineffective to relieve her current migraine symptoms.

Plaintiff had a difficult time at work after the accident. She was unable to communicate effectively, to concentrate, or to use her computer. (Pl.'s Ex. 8 23-24.) Her cognition difficulties remain and she has a hard time processing what people say and asks for explanations. (Pl.'s Ex. 1,

2

R. 0080; R. 0084-0085; Pl.'s Ex. 8 22-24.) She lost her sense of smell until April 2015. (Pl.'s Ex. 8 17-18.) She also lost hearing in her left ear, which resolved within a few months. She is constantly tired because she cannot sleep. (Pl.'s Ex. 8 15.)

For the first month after the accident, she suffered a migraine continuously. Thereafter, she had three or four migraines weekly, sometimes lasting all day and into the night. She was required to totally shut down and lie in bed with the shades closed, lights off, and sound eliminated.

She began taking nausea medicine because she was vomiting three or four times per week. She has tried four or five different medicines since the accident. She has also tried homeopathic remedies, yoga, and acupuncture, which were not successful in addressing her pain. She attended physical and occupational therapy. (Pl.'s Ex. 1, R. 0084.) She continues to look for options.

Her primary care physician, Dr. James Zeitlin, ordered complete brain rest for two weeks for plaintiff with no use of a cell phone, computer, television, and no reading. (Pl.'s Ex. 1, R. 0080.) Dr. Zeitlin also referred plaintiff to Dr. Mark Kiefner, a clinical neuropsychologist, whom she saw for four months. (Pl.'s Ex. 1, R. 0075-0087; Pl.'s Ex. 8 5.)

She remained out of work for those two weeks. Before the accident, she worked 32 to 36 hours per week, depending on her school schedule. At the time of the accident, she worked 36 hours per week and earned $15.25 per hour. Three weeks after the accident, she returned to work for four to six hours per day with restrictions and for not more than 20 hours per week. (Pl.'s Ex. 8 25.) In late May 2014, she increased to 22 hours per week. She returned to work full time at the beginning of August 2014.

She also withdrew from her studies at the University of Southern Maine, which she had attended for one and one-half years. (Pl.'s Ex. 1, R. 0078; Pl.'s Ex. 8 25-26.) She was an English major in good standing and intended to become a high school English teacher. She always loved

3

reading but her head injury affects her ability to read easily and if she reads for too long, she will have a headache. She plans to transfer to Southern Maine Community College because the course work will be less rigorous and she will receive more help. She returned to school in the fall of 2017. She was able to finish the semester but the course work was harder for her than before the accident. She continues to have difficulty understanding what people say.

Emotionally, plaintiff was miserable, depressed, angry, and irritable with people after the accident. (See e.g., Pl.'s Ex. 1, R. 0050-0053; R. 0076; Pl.'s Ex. 8 15-16.) She was unable to exercise at the gym or go out with friends as she did before the accident. She did not understand why her migraines would not end. The migraines improved six months after the accident but then worsened. (Pl.'s Ex. 1, R. 0065.) She felt like driving her car into a tree so the migraines would end. Her doctor told her that sometime the migraines last for a few months and sometimes, for five or ten years. Plaintiff did not believe she could live as she had after the accident for ten years.

Plaintiff learned she was pregnant on January 7, 2015 and had a daughter in September 2015. For one year during her pregnancy and breast feeding, plaintiff took no medicine for her migraines or nausea, which resulted in significant pain and vomiting. She began taking medicine again in February, 2016 but many medicines are not effective or have problematic side effects. She continues to see her primary care physician every three to six months, depending on whether her medicine is effective.

Plaintiff moved in with her parents during her pregnancy and continues to live with them. They help with her child when plaintiff has migraines.

Plaintiff continues to suffer at least one and sometimes more very painful migraines per week. These are severe enough to cause her to retreat to her darkened bedroom. Plaintiff testified credibly that her injuries have lasted for a very long time and she does not see an end to those

4

injuries. (Pl.'s Ex. 8 13-14; 31.) In tears, she stated it is very hard for her to keep it together and to raise her daughter. Plaintiff feels like she is a bad mother because of her disabilities.

Conclusions

Plaintiff's past medical expenses proximately caused by defendant Roberge's negligence total $8,172.38. (Pl.'s Ex. 2.) Plaintiff's past lost wages proximately caused by defendant Roberge's negligence total $6,191.50 (two weeks of no work: 36 hours per week at $15.25 = $549.00 x 2 = $1098.00; thirteen weeks at 20 hours per week: $15.25 x 16 lost hours = $244.00 x 13 = $3,172.00; nine weeks at 22 hours per week: $15.25 x 14 lost hours = 213.50 x 9 = $1,921.50; $1098.00 + $3,172.00 + $1,921.50 = $6,191.50).

More than four years after the collision between plaintiff and defendant Roberge's cars, plaintiff continues to suffer from severe headaches. She has endured significant pain and suffering as a result of the injuries, especially her headaches, proximately caused by defendant Roberge's negligence. Her personality has been negatively impacted because of the unrelenting nature of her headaches and the debilitating fear that they may continue well into the future. She is unable to enjoy activities she previously enjoyed because of the headaches. She was required to move in with her parents because she needed help with her daughter while experiencing headaches. Her goal of being a high school English teacher and her love of reading have been abandoned. Her performance at work has been negatively affected.

As a result of these factors, she is, understandably, depressed. Dr. Zeitlin's observation on February 28, 2014, that plaintiff is "crying easily since the accident, feeling depressed, not happy[,] looking forward to feeling better but not much else .." has continued to describe her for more than four years. (Pl.'s Ex. 1, R. 0051.) Plaintiff's damages for pain and suffering, emotional distress,

and loss of enjoyment of life proximately caused by defendant Roberge's negligence total $150,000.00.

The entry is

> Judgment is entered in favor of Plaintiff Meg N. Johnson and against Defendant Richard V. Roberge on Counts II and III of Plaintiff's Complaint in the amount of $164,363.88, plus prejudgment interest at the rate of 3.87%, post-judgment interest at the rate of 7.76%, plus costs.

Date: March 29, 2018

Nancy Mills
Justice, Superior Court